SEALED

| | |
|---|---|
| 1 | **KERSHAW, CUTTER & RATINOFF, LLP** |
| 2 | STUART C. TALLEY, State Bar No. 180374 |
| | 401 Watt Avenue |
| 3 | Sacramento, California 95864 |
| 4 | Telephone: (916) 448-9800 |
| | Facsimile: (916) 669-4499 |
| 5 | E-mail: stalley@kcrlegal.com |

**FILED**

JAN 2 6 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Attorneys for Relators

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

[UNDER SEAL]

Relators,

v.

[UNDER SEAL],

Defendant.

Case No. 1:11-CV-135 AWI-GSA

**COMPLAINT FOR DAMAGES, WITH DEMAND FOR JURY TRIAL**

**TO BE FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730**

**DO NOT ENTER INTO PACER**

**DO NOT PLACE IN PRESS BOX**

SEALED

-1-

COMPLAINT

1

2

3    UNITED STATES OF AMERICA, *ex*        Case No. 1:11-CV-135 AWI-GSA
     *rel.* Hope Capriola, Amber Mason,

4    Nadia Yamashita, Nancy Upton, Sonia    **COMPLAINT FOR DAMAGES,**
     Macias, and Aubrey Priest,             **WITH DEMAND FOR JURY**
5                                           **TRIAL:**

6

7                  Relators,               **(1) Knowingly False Statements to
                                              Get a False or Fraudulent Claim**
8                                           **Paid or Approved, in Violation of**
                                            **the False Claims Act, 31 U.S.C. §**
9                                           **3729(a)(1);**

10        v.
                                           **(2) Knowingly False Records or**
11                                          **Statements to Get a False or**
                                            **Fraudulent Claim Paid or**
12                                          **Approved in Violation of the**
13   BRIGHTSTAR EDUCATION                   **False Claims Act, 31 U.S.C. §**
     GROUP, INC., a Delaware                **3729(a)(2).**
14   corporation; INSTITUTE OF
     TECHNOLOGY, INC., a Delaware
15   corporation, and DOES 1 through 500,
16   inclusive,                             **TO BE FILED IN CAMERA
                                            AND UNDER SEAL PURSUANT**
17                                          **TO 31 U.S.C. § 3730**

18                                          **DO NOT ENTER INTO PACER**
                   Defendants.
19

20                                          **DO NOT PLACE IN PRESS BOX**

21

22

23

24

25

26

27

28

-2-

COMPLAINT

Plaintiffs and Relators Hope Capriola, Amber Mason, Nadia Yamashita, Nancy Upton, Sonia Macias, and Aubrey Priest, allege as follows:

## I. Introduction

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising out of false claims approved and presented by Defendants to obtain more than $38,000,000 annually from the United States Department of Education ("DOE") pursuant to the Higher Education Action, Title IV ("HEA"), from at least November 2004, continually through the present. Defendants Institute of Technology, Inc. ("IOT") and its parent, BrightStar Education Group, are the recipients of HEA federal student financial aid funds from the United States Department of Education. In requesting and receiving more than $38,000,000 annually, Defendants falsely represent every year that they are in compliance with the DOE's regulations governing schools that receive Title IV funds and that they are in compliance with the rules and regulations of the Accrediting Commissions of Career Schools and Colleges ("ACCSC").

2. Defendants had, and continue to have, actual knowledge that they are not adhering to the rules and regulations of the HEA and the ACCSC and that their representations of adherence were and are false, and that they therefore were and are submitting false or fraudulent representations of compliance. Alternatively, Defendants act and acted with deliberate indifference and/or reckless disregard as to the truth or falsity of the claims. Relators assert causes of action under the False Claims Act for submission of a knowingly false or fraudulent claims for payment or approval, and knowingly false records or statements to get a false or fraudulent claim paid or approved, in violation of 31 U.S.C. § 3729(a)(1) and (2).

## II. Jurisdiction and Venue

3. This is an action brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729, et seq., and subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331. This case arises from the wrongful conduct of the Defendants incident to obtaining funds from the United States of Department of Education pursuant to the Higher Education Act, Title IV.

-3-

4.      This Court has in personam jurisdiction over the Defendants under 31 U.S.C. § 3732(a), which authorizes nationwide service of process.

5.      31 U.S.C. § 3732(a) provides "Any action under section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant, can be found, resides, transact business, or in which any proscribed by section 3729 occurred." Venue is proper in the Eastern District of California because Defendants maintain and operates their Roseville, Clovis, and Redding campuses within this District.

### III. Plaintiffs

6.      *Qui Tam* Plaintiffs Hope Capriola, Amber Mason, Nadia Yamashita, Nancy Upton, Sonia Macias, and Aubrey Priest are all citizens of the United States of America and are resident of Fresno County, in the State of California. From 1996 through the present all of the Qui Tam Plaintiffs were former and current employees of IOT. Qui Tam Plaintiffs bring this action on behalf the United States of America.

7.      As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), Relators, simultaneously with the filing of this Complaint, provided to the United States Attorney for the Eastern District of California a statement of all material evidence and information related to this Complaint. This disclosure statement supports the existence of "submission of a knowingly false or fraudulent claim for payment or approval," under the False Claims Act (31 U.S.C. § 3729(a)(1)).

8.      The United States of America is here named a plaintiff because funds of the United States of America ("Federal funds") were and are awarded to defendant IOT, pursuant to the HEA, Title IV, as a result of the false claims alleged in this Complaint.

### IV. Defendants

9.      Defendant Brightstar Education Corporation, Inc. is the parent company for Defendant IOT. Defendant IOT is a private, for-profit higher education institute providing educational programs for working adult students. IOT maintains five campuses in California, all located within the jurisdiction of this Court. IOT enrolls approximately 3,000 students annually. IOT is accredited by the Accrediting Commissions of Career Schools and Colleges. IOT offers

-4-

1 certificate programs, and graduate and undergraduate degree programs.

2     10.    Relators are unaware of the true names and capacities of the Defendants sued as

3 Does 1 through 500. Plaintiffs will amend their complaint when the true names and capacities

4 have been ascertained. Each Doe Defendant is responsible in some actionable manner for the

5 events, occurrences, injuries and damages alleged herein.

6     11.    The terms "Defendants" will refer collectively to the aforesaid Defendants acting

7 by and through their managerial employees, and each of them.

8     12.    Managerial employees of the Defendants, in doing the acts and things described in

9 this complaint, were acting within the course and scope of their respective agencies and/or

10 employment with the Defendants, and each of them, with the knowledge and consent of the

11 Defendants, and each of them, unless otherwise indicated.

12 ## V. Specific False Claims and Fraudulent Statements

13 ### A.    Summary of the Fraudulent Conduct

14     13.    The United States Government awards approximately $6 billion a year to help

15 students obtain their educations at colleges and vocation schools. The federal funds, however do

16 not go to the students. Instead, the educational institution requests the funds of the United States

17 Department of Education or a third party intermediary lender. The United States Government or

18 the lender wires the funds directly into the institutions' accounts. The institutions then credit their

19 students for tuition.

20     14.    In order to ensure that schools receiving federal funds are actually providing an

21 appropriate and beneficial education to students, the DOE requires schools to enter into a

22 Program Participation Agreements ("PPA"). In the PPA executed by IOT, it certifies that it will

23 comply with numerous regulations governing Title IV schools and that it will comply with all

24 requirements put forth by its accrediting agency. These requirements mandate that schools:

25         a) Refrain from paying incentives to admissions representatives based on the number of students they enroll;

26

27         b) Properly evaluate students on a regular basis to ensure they are mastering the material being taught and will be qualified to obtain employment in the field for which they are trained (34

28         CFR 668.16(e); ACCSC Substantive Standards Section VII);

-5-

c) Enforce a policy of acceptable student attendance that is based on the goal of ensuring sufficient attendance such that the required knowledge, skill, and competencies can be reasonably achieved (ACCSC Substantive Standards Section VII(A)(3)(b));

d) Only provide certificates of completion to students who have demonstrated achievement and the knowledge, skill and competencies required by the program objectives (ACCSC Substantive Standards Section VII(A)(13)(h));

e) Refrain from providing false or misleading information to prospective students (ACCSC Substantive Standards Section IV(A)(5));

f) Refrain from making explicit or implicit promises of employment to prospective students (ACCSC Substantive Standards Section IV(A)(9));

g) Refrain from allowing recruiters to "assist" prospective students in completing financial aid applications (ACCSC Substantive Standards Section IV(A)(11));

h) Refrain from allowing recruiters from being "involved" in admission testing  (ACCSC Substantive Standards Section IV(A)(12));

i) Ensure that students entering the school are capable of benefiting from the training offered and have the qualifications for the training offered (ACCSC Substantive Standards Section V); and

j) Demonstrate successful student achievement by meeting or exceeding benchmark employment rates for students studying to obtain a career in a given field (presently the placement rate benchmark is 70%).  (34 C.F.R. Section 668.8(e); ACCSC Substantive Standards Section IV(B)(1)).

15.   IOT flagrantly violates these rules by:

a) Basing the bonuses, pay, and compensation of admissions representatives on the number students they enroll;

b) Encouraging admissions representatives to enroll students it knows are unqualified;

c) Encouraging admissions representatives to lie about the likelihood of obtaining employment following graduation and the potential salaries they will receive;

d) Encouraging admissions representatives to advise students to lie on financial aid applications for federal funds;

-6-

e) Failing to properly evaluate students on a regular basis after they have been enrolled in a class;

f) Graduating students who have failed to master the coursework of the class being taught;

g) Graduating students with excessive rates of absenteeism;

h) Intentionally providing false and misleading information to the ASCCS about the school's placement rates.

16.     *IOT is fully aware of the illegality of its conduct.* IOT senior management openly brags to IOT employees about duping students and the federal government and relators have complained to management about the issues outlined above yet no action has been taken.

**B.     IOT's False Certifications of Compliance to the Government, Required by Law for Eligibility to Receive the Federal Funds.**

17.     Educational institutions request Title IV funds for eligible students through several programs, including the Federal Pell Grant Program ("Pell"), the Federal Supplemental Education Opportunity Grant Program ("FSEOG"), the Federal Perkins Loan Program ("Perkins") and the Federal Family Education Loan Program ("FFELP").

18.     For an educational institution to be eligible to receive these Title IV grant funds, the federal statutes and regulations require the institution to certify to the United States Government in a Program Participation Agreement that the institution will comply with regulations promulgated by the DOE and the standards of accreditation put forth by the ACCSC. HEA, Sec. 487(a) and (a)(20); 34 C.F.R. Sec. 668.14(a)(1) and (b)(22)).  This certification is a core prerequisite for an institution's eligibility to request and receive Title IV funds.

19.     An educational institute is ineligible to receive Title IV funds without a Program Participation Agreement and without first obtaining accreditation from a nationally recognized accrediting agency.  The Agreement conditions the initial and continued participation of an eligible institution in any Title IV, HEA program.  The Agreement expressly states, in bold print:

> The execution of this Agreement by the Institute and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.

-7-

20. The Agreement's first paragraph furthermore provides that the institution's participation in the Title IV program is "subject to the terms and conditions of this Agreement."

21. In the Agreement, the educational institute certifies that "[i]t will not provide . . . any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments . . . (quoting directly from the HEA, Sec. 487(a)(2) and the federal regulations, 34 C.F.R. Sec. 668.14(b)(22)). The Agreement also provides that the school will "meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary, State authorized bodies, and nationally recognized accrediting agencies."

22. Educational institutions violating the terms of their Agreement must return the Title IV funds, along with interest and special costs incurred by the DOE. For example, University of La Verne was directed to refund $6,528,981 FFELP funds and $395,730 in Pell funds. On December 13, 2001, Benedictine University was directed to return $25,521 Pell funds, $183,407 FFELP funds, and $13,060 FSEOG funds. On September 4, 2002, Southern Wesleyan University was directed to return $18,346,658 FFELP funds, $1,079,565 Pell funds, $21,400 FSEOP funds, and $3,500 Perkins funds.

23. IOT, in requesting and receiving more than $38,000,000 a year in Title IV funds, falsely certifies to the DOE compliance with the DOE Regulations and the regulations of the ACCSC in the Agreement it submits annually to the DOE. IOT falsely induces the Government to approve and/or pay out the Title IV funds, based on its false promises to comply with these regulations. The promises when made are false. Upon making its promises and certification, IOT knowingly engages in the illegal conduct described herein.

24. IOT every year also falsely asserts compliance with the incentive compensation ban in "management assertion letters, written by IOT management for an annual compliance audit. IOT must submit to the United States Government this annual compliance audit performed by an independent certified public accountant. Participation in the Title IV program is conditioned upon IOT submitting these audits certifying compliance with the HEA incentive compensation ban. IOT is ineligible to submit any claims for HEA funds unless it submits this annual audit.

-8-

## C.    IOT's Claims for the Federal Government Funds

25.    Upon entering the Program Participation Agreement with the United States Secretary of Education, IOT is eligible to request the Title IV funds from the United States Secretary of Education (for Pell Grant funds) or from third party lenders (for governmental-insured loans).

26.    For Pell Grant funds, IOT submits a request for those funds directly to the Secretary of the Untied States Department of Education. The request for funds is not a student application but a request prepared and transmitted by IOT to the Secretary of the United States Department of Education, stating the requested amount of funds. The United States Department of Education transfers the Pell Grant funds electronically directly into an IOT account. Upon receiving the Pell Grant Funds, IOT credits various IOT students for tuition paid. An IOT student does not request or receive a dime of the Pell Grant funds.

27.    IOT's claims for the Pell Grant funds are fraudulent. When IOT requests, receives and retains the Pell Grant funds, IOT knows it is ineligible for those funds because of its intentional violations of the Higher Education Act as described herein. IOT knows that compliance with the Higher Education Act funding statutes are a core prerequisite for an institution's eligibility to request and receive Title IV funds.

28.    For government-insured loans, including the FFELP, IOT submits the request for those funds directly to a private lender. The IOT request for government-insured load funds, arrange, managed and prepared by IOT, includes a student application that *contains an express certification by IOT that the student is an eligible student under the Title IV program*. The claim for government-insured loans *must* include this IOT certification. IOT knows that this claim for funds is false because IOT knows its students are *not* eligible under the Title IV program due to IOT's violations of the HEA. *Only* students at eligible Title IV schools may receive credit for Title IV government-insured loan funds disbursed by private lenders to educational instructions. IOT's fraudulent violations of the HEA and the rules of the ACCSC make it an ineligible educational institution to request and disburse Title IV funds, and thus its students are ineligible under the Title IV program. The lender, typically a bank, transfers the government-insured loan

-9-

1  funds directly into an IOT account.  Upon receiving the government-insured loan funds, IOT

2  credits various IOT students for tuition paid.

3     29.    IOT's claims for the government-insured loan funds are fraudulent.  When IOT

4  requests, receives and retains the government-insured loan funds, IOT knows it is ineligible for

5  those funds because of its intentional violations of the HEA and the rules of the ACCSC.  IOT

6  knows that compliance with the Higher Education Act and the rules of the ACCSC are core

7  prerequisites for an institution's eligibility to request and receive Title IV funds.

8     30.    The United States Government pays all interest on the government-insured loans

9  while the students are enrolled in classes and during authorized grace periods.  The loans are

10  guaranteed by state agencies or non-profit organizations (called "guarantee agencies"), and are

11  subsidized and reinsured by the United States Department of Education.  If a student defaults, the

12  guarantee agency reimburses the lender.  If the guarantee agency cannot collect from the student,

13  the Department of Education reimburses the agency.

14     31.    The United States Department of Education monitors loan defaults of post-

15  secondary schools and calculates a "cohort default rate" every year for IOT.  The Department of

16  Education calculates the loss to the United States Government relying upon this rate.

17  **First Cause of Action**

18  **Knowingly False Statements to Get a False or Fraudulent Claim Paid or Approved, in**

19  **Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)**

20     32.    Plaintiffs re-allege, and fully incorporate herein by reference, paragraphs 1 through

21  31 herein.

22     33.    In performing all of the acts set out herein, Defendants defrauded the United States

23  of America by knowingly presenting, or causing to be presented, to one or more officers,

24  employees or agents of the United States of America, a false and fraudulent claim for payment or

25  approval in contravention of the False Claims Act (31 U.S.C. § 3729(a)(3)), to the damage of the

26  treasury of the United States of America, by causing the United States to pay out money it was

27  not obligated to pay.

28

-10-

34.     Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the United States of America is in excess of $170 million from November 2004, through the present.

### Second Cause of Action

### Knowingly False Records or Statements to Get a False or Fraudulent Claim Paid or Approved, in Violation of the False Claims Act, 31 U.S.C. § 3729(a)(2)

35.     Plaintiffs re-allege, and fully incorporate herein by reference, paragraphs 1 through 34 herein.

36.     By virtue of the acts described above, Defendants have knowingly made, used or caused to be made or used, a false record or statement to get false or fraudulent claim paid or approved by the United States of America, in contravention of the False Claims Action (31 U.S.C. § 3729(a)(2)), to the damage of the treasury of the United States of America, by causing it to pay out money it was not obligated to pay.

37.     Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the United States of America is in excess of $170 million from November 2004, through the present.

### Prayer for Relief

WHEREFORE, Plaintiffs request the following relief:

1.     Judgment in favor of the United States of America against Defendants, jointly and severally, by reasons of the violations of the False Claims Act as set forth above, in an amount equal to three times the amount of damages the United Stats has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00), for each violation, plus three times the amount of damages which the United States Government has sustained, pursuant to 31 U.S.C. § 3729(a);

2.     Award to Relators, as the *Qui Tam* plaintiffs, of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act on the United States' recovery;

3.     Award to Relators of all reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs;

-11-

4.     Punitive damages on all causes of action, to the extent allowed by law; and

5.     Such other and further relief as the Court deems proper.

### Demand for Jury Trial

Plaintiffs demand a trial by jury, pursuant to FRCP 38.

Dated:  _/-25-/1_

                                   KERSHAW, CUTTER & RATINOFF LLP


                                   By _____
                                          STUART C. TALLEY
                                          *Attorneys for Plaintiffs*